### RABINOWITZ v. UNITED STATES.
### No. 4726.

Circuit Court of Appeals, Third Circuit.
Aug. 2, 1932.

THOMPSON, Circuit Judge, dissenting.

Phillip Forman, U. S. Atty., of Trenton, N. J., Anthony Giuliano, Asst. U. S. Atty., of Newark, N. J., and Bradley B. Gilman, of Washington, D. C.

Isadore Rabinowitz, of Paterson, N. J. (Addison P. Rosenkrans, of Paterson, N. J., of counsel), for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court against the United States for $2,134.40 spent by the appellee in an effort to have himself cured of pneumonia while he was a soldier in the United States Army. This amount was paid to Barnet Memorial Hospital in Paterson, N. J., and to doctors and nurses.

The appellee enlisted in the United States Army on August 24, 1918, as an army field clerk in the Adjutant General's Department and was stationed at Hoboken, N. J. He was on active duty at Hoboken during the day, but went to Paterson at night.

He was taken ill of influenza on October 1, 1918, and remained at his home in Paterson. His condition became serious, and pneumonia in a malignant form developed within a few days.

No question has been raised as to the amount expended if the United States is liable for any amount. The question is whether the plaintiff may recover for the hospital and medical expenses under the circumstances of this case while serving as a field clerk at Hoboken.

Under the Army Appropriation Act for the fiscal year of 1919 (Act July 9, 1918 [40 Stat. 866]), the United States is liable: "For medical care and treatment not otherwise provided for, including care and subsistence in private hospitals, of officers, enlisted men, and civilian employees of the Army * * * when entitled thereto by law, regulation, or contract."

The Army Regulations in effect at that time provide that: "When medical treatment including medicine, nurses and hospital care, is required by an officer, enlisted man * * * which cannot otherwise be had, the commanding officer may employ the necessary civilian service to furnish the same, and just accounts therefor will be paid by the Medical Department. When * * * the enlisted man is on duty where there is no officer, he * * * may arrange for the required service."

The testimony shows that there were no army barracks at Hoboken, and the plaintiff was, in consequence, authorized to return to his home in Paterson every night, and was given an allowance on that account in addition to his regular pay.

On the evening of September 30, 1918, he had been on active duty 24 hours, and on that account was authorized not to return from his home in Paterson to active duty until October 2d. He was taken ill on October 1st, went to bed, and called in Dr. Roemer, his family physician. He soon thereafter developed malignant pneumonia, and was, on the orders of the physician, sent to the Barnet Memorial Hospital in Paterson, where he remained until January 7, 1919. He was desperately ill, and for a long time it was feared that he could not live. Dr. Roemer notified the army medical authorities at Hoboken on October 2d of the plaintiff's illness, and was told "to take care of him and order him to return to Hoboken as soon as he was well." Dr. Kunkler, first lieutenant in the Medical Corps, attached at the time to the surgeon's office at Hoboken, was sent to the home of Rabinowitz, upon report of his illness on or about October 3, 1918, and had general supervision over him from that time until he was discharged on January 7, 1919. During all this time the lieutenant and Major Harrold, who was an

officer attached to the Medical Corps, consulted constantly with the local attending physicians. As his condition was serious from the first, he could not be moved, and no physician from the Army or officer from the Medical Corps suggested that he be moved until December 26, 1918. Lieutenant Kunkler testified: "I put him up in quarters. By that I mean he was directed to remain there, and I left instructions to report at the Attending Surgeon's Office at a later date, which I don't recall now, for examination."

The District Court found that, while there were ample hospital and medical facilities of the Army in the Hoboken district, sixteen miles away from Paterson, these were not available to Rabinowitz during his illness.

█ If Rabinowitz was "on duty" while in Paterson during his period of illness, he had the right under the regulations in effect at that time to arrange for the services rendered him and incur the expense therefor, for there was no officer stationed there, and, while the physicians from the Medical Corps consulted with the local physicians, they did not order or authorize the service, unless the directions of Lieutenant Kunkler amounted to that. There were no barracks at Hoboken where the petitioner would have stayed at night, if there had been, and so he was permitted and authorized to return to his home in Paterson for the nights when not on active duty, and was allowed "additional pay by the government for that purpose." If Rabinowitz had been taken ill in barracks in Hoboken, he unquestionably would have been considered "on duty" during his illness. It seems to us that, within the meaning and spirit of the act and regulations covering the period of the illness, the petitioner was on duty in Paterson, and, as no officer was present there upon whom he might call for consent to arrange for the civilian service, the petitioner himself had authority to do so. This conclusion is supported by the decision of Comptroller Warwick in the case of Robert Lamar. Volume 24, Decisions of the Comptroller of the Treasury, p. 783.

█ The government in its supplemental brief says that the petitioner cannot prevail, for the further reason that he was absent from his post of duty on leave, pass, or furlough for more than 24 hours, and that, under the law and decisions of the Comptroller, he is not entitled to expenses for medical attendance, etc. The cases cited by counsel support this proposition, but they are inapplicable to the fact of this case. On the evening of September 30, 1918, as above stated, the petitioner had been on active duty for 24 hours, and in consequence was told by the Army authorities that he need not report for active duty the following morning, October 1st, but might do so on October 2d. Unfortunately, he was taken ill on October 1st within 24 hours of the time he was on active duty. He was not absent on leave, pass, or furlough, within the meaning of these terms as used in the Army. His home in Paterson was his post of duty when he was taken ill and within the meaning of the law his barracks. He was ordered not to report on October 1st because the Government was making up to him for the additional, continuous hours which he had been on duty. If there had been barracks at Hoboken, and the petitioner had been told not to report until October 2d because he had been on continuous, active duty for 24 hours, and he had gone to the barracks and had been taken ill there on October 1st, without doubt the government could not maintain its position that he was absent on furlough. His home in Paterson was, for the purposes of this case, his barracks. He was not absent on leave, and the cases cited are not apposite.

Rabinowitz properly paid for the service rendered and brought this suit. The government should pay him the expenses which were necessarily incurred to save his life.

The judgment is affirmed.

THOMPSON, Circuit Judge (dissenting).

This is an appeal by the United States from a decree of the District Court for the District of New Jersey ordering the United States to pay to the petitioner, Rabinowitz, $2,134.40 without interest and without costs.

The petitioner, while enlisted in the United States Army as a field clerk, was on duty at Hoboken, N. J. He resided in Paterson, and was allowed to go to his home each afternoon and return to duty the next morning. The petitioner was taken seriously ill, and, although he was attended by the army physician, he made no application to the commanding officer for his care and no authority for his care was given by that officer. The expenses for his medical and hospital care and nursing were paid by him, and for those expenses and expenses for care by his mother he brought suit against the United States. It is claimed that the expenses are recoverable under the Army Appropriation Act for the year 1919 (40 Stat. c. 143, p. 866), which provides: " * * * For medical care and treatment not otherwise provided for, including care and subsistence in private hos-

pitals, of officers, enlisted men, and civilian employees of the Army * * * : Provided further, That this shall not apply to officers and enlisted men who are treated in private hospitals or by civilian physicians while on furlough."

Paragraph 1476 of the Army Regulations of 1913 provides: "When medical treatment, including medicine, nurses and hospital care, is required by an officer, an enlisted man * * * which can not otherwise be had, the commanding officer may employ the necessary civilian service to furnish the same, and just accounts therefor will be paid by the medical department. When * * * the enlisted man is on duty where there is no officer, he * * * may arrange for the required service."

The trial judge made the following findings of fact:

"1. That there were ample hospital and medical facilities in the Army in the Hoboken District at the time plaintiff incurred the expense in question.

"2. That this expense was not incurred by the Commanding Officer or authorized by him.

"3. That the plaintiff was on duty at the Hoboken Port of Embarkation where there was a Commanding Officer in charge."

I am constrained to dissent from the statement made in the majority opinion that the petitioner was on duty in Paterson within the meaning and spirit of the Appropriation Act and the Army Regulation covering the period of the illness. As I read the testimony and the record, the petitioner was off duty when he left Hoboken. Therefore the conditions did not exist which authorized him to arrange for the required service.

28 USCA § 41, subd. 20, authorizes suit against the United States upon all claims not exceeding $10,000 founded upon the Constitution or any law of Congress or upon any regulation of an executive department or upon any contract, express or implied. There was no express contract, and an implied contract must be implied in fact and not based upon equitable considerations and implied in law. United States v. Minnesota Investment Company, 271 U. S. 212, 46 S. Ct. 501, 70 L. Ed. 911. The conditions upon which the suit may be brought are established by the act and the regulation. The medical officers were not the petitioner's commanding officers, and their acts were not such as to raise any implication of authority conferred upon them by the commanding officer, by

whom that authority must expressly be granted.

The petitioner below clearly did not come within the provision of the last sentence of paragraph 1476 of the Army Regulations, for he was not on duty where there was no officer, but was on duty where there was a commanding officer. He therefore had no authority to bind the United States by arranging for the required service.

The decree should be reversed.