**ROXFORT HOLDING CO., a New Jersey corporation, Plaintiff,**

v.

**UNITED STATES of America and Joseph J. Mayer, Acting District Director of Internal Revenue, Defendants.**

Civ. A. No. 613–55.

United States District Court
D. New Jersey.

Sept. 21, 1959.

Robert Inlander, Newark, N. J., Emil Mascia, Sarcone & Mascia, Newark, N. J., of counsel, for plaintiff.

Chester A. Weidenburner, U. S. Atty., Barbara Morris, Asst. U. S. Atty., Newark, N. J., for defendants.

MORRILL, District Judge.

This is a Tucker Act suit, 28 U.S.C.A. § 1346(a) (2), brought by a landlord to recover for use and occupation by the Government of the landlord's premises for the period October 1–26, 1954. During that period the Government had padlocked the leased premises after levying on the chattels of the tenant, a delinquent taxpayer. Tax liens had been duly filed. A lease was in force during the period and there was no evidence before me that the landlord had taken any steps to terminate the tenancy which expired on 31 December 1955, except as hereinafter stated.

To recover under the Tucker Act, the plaintiff must establish a claim founded upon the Constitution or upon an express or implied contract with the Government. But whether the theory of these suits be that there was a taking under the Fifth Amendment, and that therefore the Tucker Act may be invoked because it is a claim founded upon the Constitution, or that there was an implied promise by the Government to pay for it, is immaterial. In either event, the claim traces back to the prohibition of the Fifth Amendment, "nor shall private property be taken for public use, without just compensation." United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789.

## I.

When the premises were padlocked only the right to possession of the tenant-taxpayer was interfered with. There was no taking or interference with any property rights of the plaintiff-landlord which would warrant the award of compensation under the Fifth Amendment of the Constitution. In this respect, our case differs from Feldwin Realty Co. v. United States, D.C.D.N.J.

1959, 169 F.Supp. 73. There the Government levied upon the personalty of a *former* tenant and thus interfered with the possessory rights of the owner of the premises. And see Hirsch v. United States, D.C.E.D.N.Y.1959, 170 F.Supp. 229. "Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time," United States v. Dickinson, 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789.

## II.

 Recovery upon an implied contract is limited to contracts implied in fact and not in law. United States v. Minnesota Mutual Investment Co., 1926, 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; First National Bank of Emlenton, Pa. v. United States, 3 Cir., 1959, 265 F.2d 297. Essentially, contracts implied in law are contracts imposed irrespective of the assent of the parties, while contracts implied in fact do contain the elements of mutual agreement and intent to promise, though not expressed in words. 1 Williston, Contracts, § 3 (3d ed.). There is nothing before me to justify a finding of an intent to promise on the part of the Government or of a mutual agreement between the parties.

Many of the cases relied on by the plaintiff are those which allowed recovery where there was a taking of the *plaintiff's* property without compensation. In Niagara Falls Bridge Commission v. United States, Ct.Cl.1948, 76 F.Supp. 1018, 1019, the court used the following language which the plaintiff relies on: "If anyone goes into occupancy of another's premises not under a claim of right, he does so with the implied obligation that he will pay a reasonable rental therefor. This applies to the United States as well as to anyone else." But the court went on to say that "such a contract is implied" and that "it is to be presumed that a party intends to do that which the law requires him to do." If the court meant that liability was to be imposed because of a contract implied in law—and it would be deemed such a contract, 1 Williston, Contracts, § 3A (3d ed.)—then I cannot agree. However, it is to be noted that the court also said, "Even had there been a refusal to pay, defendant would, no doubt, have been liable under the Fifth Amendment."

## III.

 It has been argued in instances of this sort that the plaintiff may recover because the Government became a tenant at sufferance. United States v. Whipple Hardware Co., 3 Cir., 1911, 191 F. 945, 946. There the Government condemned premises which the defendant was occupying as a tenant. The defendant held over and resisted a Government claim for use and occupation on the ground that it was a trespasser and not a tenant at sufferance. Recovery was allowed, the court saying: "The law implies a contract to pay rent from the mere fact of occupation, unless the occupancy be such as to negative the existence of a tenancy," citing New Jersey cases. While local law governs the nature and extent of interests in real property, the matter of liability of the federal government is to be determined by federal law. Cf. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454; and Heiser v. Woodruff, 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970. State law cannot impose liability in contravention to the Tucker Act. A tenant at sufferance is one who had a possessory interest in land by virtue of a conveyance and wrongfully remains in possession after the termination of his estate without claiming a superior title. In some jurisdictions this class of possessors is turned into tenants at the election of the owner; in other jurisdictions a tenancy by agreement is imposed. 1 American Law of Property §§ 3.32–3.33 (Casner ed. 1952). In either case, there is no tenancy under an agreement implied in fact but rather one imposed by law, and there therefore may not be recovery under the Tucker Act, apart from the fact that it is impossible

to treat the Government here as a possessor holding over.

### IV.

As to recovering by virtue of an express agreement or an agreement implied in fact, the plaintiff relies on the following. About October 10, 1954, Mr. Inlander, then acting as the plaintiff's attorney, telephoned to a Mr. Rothenberg of the Internal Revenue Service concerning the plaintiff's claim for use and occupation of the premises. Rothenberg assured him, Inlander says, that if the sale brought enough to pay the Government something the landlord would be paid. Inlander testified that this assurance was given again by Rothenberg just prior to the sale. The Government introduced evidence tending to discredit the fact of such assurances and to the effect that Rothenberg had no authority to bind the Government to any agreement to pay for use and occupation. Whether or not Rothenberg ever gave such an assurance which plaintiff claims was tantamount to an agreement need not now be decided because at the oral argument the plaintiff conceded that Rothenberg had no authority to bind the government. Furthermore, Inlander's letter of 27 October 1954 to the Director of Internal Revenue, in which payment for use and occupation is claimed, makes no mention of any agreement with the Government and says nothing about Rothenberg's alleged assurances. The gist of the letter is that "since you were in possession of the premises from October 1st, 1954, through October 26th, 1954 * * * you are responsible or the assets are responsible for the rent thereafter." Surely, if Inlander believed his claim was based on Rothenberg's assurances, he would have mentioned this fact in the letter.

### V.

 Having conceded the lack of Rothenberg's authority, the plaintiff then shifted his ground for recovery to deceit practiced by the Government. The thrust of the argument is that if Rothenberg had no authority to bind the Government he should have so notified Inlander, and

having failed to do this, Inlander was led to believe that Rothenberg did have the authority and therefore he took no further steps to protect the plaintiff. First of all, assuming even that Rothenberg gave the assurances, the necessary ingredients for actionable deceit are lacking. 3 Restatement, Torts § 525 et seq. (1956), Harper and James, Torts, § 7.1 et seq., Prosser, Torts, § 86 et seq. Secondly, if it is tortious conduct of the Government that the plaintiff relies on, it cannot, under its express provisions, recover under the Tucker Act. Third, the plaintiff may not recover under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671, 2674, 2680(h) on the basis of a claimed tortious interference by the Government with a prospective economic advantage of the plaintiff. Dupree v. United States, 3 Cir., 1959, 264 F.2d 140.

Let the foregoing constitute compliance with F.R.Civ.P. rule 52, 28 U.S.C.A.

The defendant will submit an order of judgment for the defendant, without costs.